**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| WBIP, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. |
| v. | ) 11-10374-NMG |
| | ) |
| KOHLER CO., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM & ORDER

GORTON, J.

In this patent infringement action plaintiff WBIP, LLC ("WBIP") alleges that defendant Kohler Co. ("Kohler") infringes WBIP's patents directed to marine power generators that include a catalyst component in their exhaust systems to reduce emissions.  In May, 2013, a jury found that the subject patents were valid and willfully infringed by Kohler and awarded $9,641,206 in damages to WBIP.

After the verdict, Kohler moved for a new trial or, in the alternative, a remittitur and renewed its previous motion for judgment as a matter of law.  WBIP moved for a permanent injunction or in the alternative an ongoing royalty, enhanced damages and attorneys' fees and an accounting and pre- and post-judgment interest.

In an August, 2013 Memorandum and Order, the Court denied Kohler's motion for judgment as a matter of law and WBIP's motion for a permanent injunction but otherwise took WBIP's motion for an ongoing royalty and the other pending motions under advisement.  WBIP moved for the Court to reconsider its denial of a preliminary injunction and both parties submitted supplemental briefs with respect to an impending royalty.

The Court held a hearing on the pending motions on January 14, 2014 and took the matters under advisement.

I.    **Kohler's Motion for a New Trial or Remittitur**

At trial, both parties presented evidence that damages for infringement should be based on $26,858,470 in sales of infringing products by Kohler.  Kohler argued for a royalty rate of 2% to be awarded on the basis of those sales while WBIP suggested a 14.7% rate.  Nevertheless, on the special verdict form provided, the jury applied a royalty rate of 13.5% to sales of $71,416,345 for a total damages award of $9,641,206.

Kohler maintains that the damages award is not supported by the evidence because neither the sales figure of $71,416,345 nor the royalty rate of 13.5% is supported by the evidence.  It contends that those errors warrant a new trial or at the very least remittitur.  Kohler also asserts that a new trial is warranted because WBIP's damages expert improperly aggregated WBIP and Westerbeke Corporation for the purposes of calculating

-2-

damages and Kohler was unfairly prejudiced by WBIP's introduction of evidence pertaining to prior carbon monoxide lawsuits.

### A.   Legal Standard

A jury's award of damages is a factual finding that is reviewed to determine whether it is supported by substantial evidence. <u>Powell</u> v. <u>Home Depot U.S.A.</u>, 663 F.3d 1221, 1228-29 (Fed. Cir. 2011).  A verdict is supported by substantial evidence if

> reasonable jurors viewing the evidence as a whole could have found the facts needed to support the verdict in light of the applicable law.

<u>Baxter Healthcare Corp.</u> v. <u>Spectramed, Inc.</u>, 49 F.3d 1575, 1582-83 (Fed. Cir. 1995) (internal citation and quotation marks omitted).  Furthermore, a jury's verdict with respect to an award of damages must be upheld unless it is

> grossly excessive or monstrous, clearly not supported by the evidence, or based on speculation or guesswork.

<u>Brooktree Corp.</u> v. <u>Advanced Micro Devices, Inc.</u>, 977 F.2d 1555, 1580 (Fed. Cir. 1992) (internal citations and quotation marks omitted).

If the reviewing court finds that the jury's verdict was excessive in light of the evidence, it may in some instances grant a remittitur.  The decision to do so is generally

discretionary but the First Circuit Court of Appeals has held that

> [i]n exercising this discretion, the court is obliged to impose a remittitur "only when the award exceeds any rational appraisal or estimate of the damages that could be based upon the evidence before it."

Trainor v. HEI Hospitality, LLC, 699 F.3d 19, 29 (1st Cir. 2012) (quoting Kelley v. Airborne Freight Corp., 140 F.3d 335, 355 (1st Cir. 1998)).  Courts in the First Circuit follow the "maximum recovery rule" which holds that any remittitur must represent the "highest reasonable total of damages for which there is adequate evidentiary support." Marchant v. Dayton Tire & Rubber Co., 836 F.2d 695, 704 (1st Cir. 1988).

In the context of a reasonable royalty in a patent infringement case, the maximum recovery rule does not require that both the sales upon which the royalty is based and the royalty rate be adjusted to the maximum amount supported by evidence at trial when the jury makes specific findings as to both but only one of them is unsupported by substantial evidence.  For example, Judge Rader of the Federal Circuit Court of Appeals has reasoned that a rule requiring district court judges to change both the royalty base and royalty rate when only the royalty base lacked evidentiary support would undermine the purpose of the maximum recovery rule to minimize interference with the jury's damages award. See Cornell Univ. v.

Hewlett-Packard Co., 609 F. Supp. 2d 279, 292-93 (N.D.N.Y. 2009) (Rader, J., sitting by designation), amended on other grounds, No. 01-1974, 2009 WL 1405208 (N.D.N.Y. May 15, 2009).

In the alternative, the Court has broad discretion to order a new trial when the verdict is against the clear weight of the evidence or to prevent injustice. Jennings v. Jones, 587 F.3d 430, 436 (1st Cir. 2009).  Moreover, a second trial limited to damages is proper when there is no "substantial indication that the liability and damages issues are inextricably interwoven." Phav v. Trueblood, Inc., 915 F.2d 764, 767 (1st Cir. 1990) (quoting Spell v. McDaniel, 824 F.2d 1380, 1400 (4th Cir. 1987), cert. denied, 484 U.S. 1027 (1988)).

### B.  Application

The Court finds, initially, that the royalty base used by the jury, i.e., the amount of sales to be subject to royalty payment, $71,416,345, is not supported by substantial evidence. Damages experts for both parties testified that damages should be based on sales amounting to $26,858,470, and the jury was asked to find a sales amount as part of its damages calculation on the special verdict form.  Furthermore, there is insufficient evidence to support WBIP's theory that the jury inflated the sales figure in order to add an "upfront royalty" of nearly double that which is otherwise due on the basis of actual sales. As a result, the Court finds that the largest royalty base

supported by the evidence is $26,858,470, the amount of
infringing sales as agreed to by the parties.

On the other hand, the 13.5% royalty rate is supported by
substantial evidence.  The jury was charged on the Georgia-
Pacific factors and it selected a rate that fell between the
rates of 2% and 14.7% proffered by the parties' experts.  The
Federal Circuit has upheld royalty rates that fall between the
figures advanced by the parties even when they are not clearly
derived from figures advanced at trial. See Fuji Photo Film Co.
v. Jazz Photo Corp., 394 F.3d 1368, 1378 (Fed. Cir. 2005)
("[T]he jury is not bound to accept a rate proffered by one
party's expert but rather may choose an intermediate royalty
rate."); Smithkline Diagnostics, Inc. v. Helena Labs. Corp., 926
F.2d 1161, 1167-68 (Fed. Cir. 1991) (explaining that a
reasonable royalty rate need not be supported by specific
figures advanced by either party).

Moreover, evidence that Kohler was operating at a loss does
not mandate Kohler's preferred 2% rate, especially in light of
evidence that Kohler sold its infringing generators for 15% less
than WBIP charged its customers.  The Federal Circuit has held
that

> an infringer's net profit margin is not the ceiling by
> which a reasonable royalty is capped.  The infringer's
> selling price can be raised if necessary to
> accommodate a higher royalty rate, and indeed,
> requiring the infringer to do so may be the only way

to adequately compensate the patentee for the use of its technology.

Douglas Dynamics, LLC v. Buyers Prods. Co., 717 F.3d 1336, 1346 (Fed. Cir. 2013) (citing Golight, Inc. v. Wal-Mart Stores, Inc., 355 F.3d 1327, 1338 (Fed. Cir. 2004) (rejecting Wal-Mart's argument that it could not raise its prices to cover the cost of a royalty because it was already selling at a loss)).  Moreover, WBIP's expert testified that a 14.7% royalty, which is higher than what the jury awarded, would allow Kohler to maintain the profit margin that it required to stay in business.

As a result, the Court proffers WBIP the choice between accepting a remittitur of $3,625,893, which is a 13.5% royalty on sales of $26,858,470, or a new trial on damages.  It will not, however, order a new trial based on the other grounds offered by Kohler.  Kohler argued before trial that WBIP should not be permitted to aggregate Westerbeke and WBIP for the purposes of damages or introduce evidence of prior carbon monoxide lawsuits.  The Court rejected those contentions and Kohler has presented no new arguments to dissuade it.

## II.  **WBIP's Motion for an Accounting and for Pre- and Post-Judgment Interest**

WBIP has moved for the Court to amend its Judgment to add 1) reasonable royalties for Kohler's infringing sales made between September, 2012 and the date of entry of judgment, by way of an "accounting", 2) pre-judgment interest, preferably at

the Massachusetts statutory rate of 12% and 3) post-judgment interest after resolving the post-trial motions at a rate of 0.12%.

The Court will amend the judgment to account for sales totaling $1,107,586 between September, 2012 and the entry of judgment in May, 2013, i.e., $149,524 in additional damages based on a royalty of 13.5%.  As a result, the total compensatory damages award, if WBIP accepts the remittitur, is $3,775,418.

The Court will also award pre-judgment interest because there is no evidence that Kohler was prejudiced by any delay of WBIP in filing suit and, indeed, Kohler abandoned its defense of laches before trial began. See Lummus Indus., Inc. v. D.M. & E. Corp., 862 F.2d 267, 275 (Fed. Cir. 1988) (holding that delay does not justify withholding pretrial interest absent prejudice).

The Court declines, however, to award pre-judgment interest at the Massachusetts statutory rate of 12% and will instead apply the prime rate, compounded quarterly.  The Court is persuaded that the prime rate is an appropriate compromise between the Massachusetts statutory rate, which is excessive, and the miniscule Treasury Bill rate, which will not adequately compensate WBIP for the pre-judgment period of infringement. See Uniroyal, Inc. v. Rudkin-Wiley Corp., 939 F.2d 1540, 1545 (Fed.

Cir. 1991) (explaining that it is not necessary for a plaintiff to show that it borrowed money at the prime rate to be awarded interest at that rate); NTP, Inc. v. Research in Motion, Ltd., 270 F. Supp. 2d 751, 763 (E.D. Va. 2003) (finding the prime rate compounded quarterly to be a "conservative, middle-of-the-road approach" that places the patent-holder in as good of a position as if the infringer had taken a license rather than infringed).

Finally, the Court will award post-judgment interest at the Treasury Bill rate of 0.12%, compounded annually, to be applied to the total money judgment, including pre-judgment interest, enhanced damages, attorneys' fees and ongoing royalties.

## III. **WBIP's Motion for Enhanced Damages and Attorneys' Fees**

WBIP submits that the Court would be justified in enhancing damages and awarding attorneys' fees based on a finding that Kohler's infringement was willful.

### A. Enhanced Damages

#### 1. Legal Standard

Under 35 U.S.C. § 284, a district court may increase damages up to three times the amount assessed as compensatory damages when the jury finds infringement of a valid patent. The Federal Circuit employs a two-step test to determine if enhanced damages are warranted:

> First, the fact-finder must determine if an accused infringer is guilty of conduct, such as willfulness, upon which increased damages may be based. If so, the

> court then exercises its discretion to determine if
> damages should be increased given the totality of the
> circumstances.

Mentor H/S, Inc. v. Med. Device Alliance, Inc., 244 F.3d 1365,

1380 (Fed. Cir. 2001) (citing Jurgens v. CBK, Ltd., 80 F.3d

1566, 1570 (Fed. Cir. 1996)).

### 2.   Willfulness

#### a.   The Seagate test

In order to prove that Kohler willfully infringed its

patents at the first step of the test for enhanced damages, WBIP

must establish, by clear and convincing evidence, that 1) Kohler

acted despite an "objectively high likelihood" that its actions

infringed a valid patent and 2) Kohler either knew about that

objectively high likelihood or the likelihood was so obvious

that it should have known about it. In re Seagate Tech., LLC,

497 F.3d 1360, 1371 (Fed. Cir. 2007).  The Federal Circuit has

explained that the so-called "objective" prong of the test, i.e.

the objectively high likelihood of infringement, is a question

for the court to determine rather than the jury. Bard Peripheral

Vascular v. W.L. Gore & Assoc., 682 F.3d 1003, 1006-07 (Fed.

Cir. 2012).  The trial court must make a

> threshold determination of objective recklessness
> [which] entails an objective assessment of potential
> defenses based on the risk presented by the patent.

Id. at 1006.  The question of "subjective" recklessness, i.e. if the infringer knew or should have known about the objective risk, is a question of fact for the jury. Id.

The Federal Circuit has described the former question as a "threshold determination" which "entails an objective assessment of potential defenses based on the risk presented by the patent." Id.  It has explained that the objective prong "tends not to be met where an accused infringer relies on a reasonable defense to a charge of infringement." Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc., 620 F.3d 1305, 1319 (Fed. Cir. 2010) (citations omitted).  Moreover, it has cautioned that the fact that the jury rejected the defense is not dispositive when the evidence shows that the question was close. DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1337 (Fed. Cir. 2009).

### b.  Application

As an initial matter, the Court does not read Bard as foreclosing it from deciding the objective prong of willfulness after submitting the question of subjective willfulness to the jury, notwithstanding the fact that the Federal Circuit referred to the objective prong as a "threshold requirement". Bard, 682 F.3d at 1006.  This Court agrees with other district courts that it is appropriate to delay ruling on the objective prong until after the jury has reached a verdict with respect to defenses

-11-

involving questions of fact. See Ill. Tool Works, Inc. v. MOC
Prods. Co., 946 F. Supp. 2d 1042, 1046-47 (S.D. Cal. 2012); Cook
Inc. v. Endologix, Inc., No. 09-01248, 2012 WL 3779198, at *2
(S.D. Ind. Aug. 30, 2012); see also Powell, 663 F.3d at 1237 n.2
(acknowledging that district courts have broad discretion to set
the order of trial and suggesting that such discretion extends
to the order of consideration of the two prongs of willfulness).

In this case, Kohler relied upon defenses of obviousness
and non-infringement.  The jury found that WBIP had proved, by a
preponderance of the evidence, that its patents were infringed.
It also found that Kohler had failed to prove, by clear and
convincing evidence, that WBIP's patents were obvious.
Nevertheless, the "objective recklessness" prong is not met if
either defense was reasonable or presented a close question.
Spine Solutions, Inc., 620 F.3d at 1319; DePuy Spine, Inc., 567
F.3d at 1337.

The Court finds that Kohler was objectively reckless under
the first prong of the Seagate test.  As to obviousness, the
fact that all of the claim limitations of WBIP's Low-CO marine
generator patents were found in combination in the prior art
Phipps and Fujimoto patents does not preclude the Court from
finding the defense unreasonable.  Instead, the fact that
Kohler's own chief engineer testified one year after
Westerbeke's invention that it was impossible to design a marine

-12-

generator that did not produce carbon monoxide severely undercuts Kohler's argument that combining those elements would have been obvious to a person having ordinary skill in the art. Obviousness was not a reasonable defense.

With respect to non-infringement, the Court disagrees with Kohler that it was objectively reasonable for Kohler to rely on the fact that Kohler and Westerbeke employed different vendors to manufacture their respective engine controllers. Infringement is assessed by comparing the accused product and the patent claims, not the accused product and a commercial embodiment of the patent, Amgen Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1346-47 (Fed. Cir. 2003), and therefore the source of Westerbeke's commercial embodiments is simply irrelevant to a defense of non-infringement.

Finally, the Court discounts the fact that the Patent Office allowed Kohler's requests to reexamine the infringed patents because the Federal Circuit has held that the occurrence of a reexamination is not probative on the issues of validity or willfulness. See Hoechst Celanese Corp. v. BP Chems. Ltd., 78 F.3d 1575, 1584 (Fed. Cir. 1996).

### 3. Circumstances justifying enhanced damages

#### a. Read factors

Kohler's willful infringement justifies enhanced damages. In determining the appropriate amount of enhancement, district

courts apply the Read factors, which include (1) whether the infringer deliberately copied the ideas or design of the patent-holder; (2) whether it investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior during the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the infringer's misconduct; (7) any remedial actions taken by the infringer; (8) whether the infringer was motivated by a wish to harm the patent holder; and (9) whether the infringer attempted to conceal its misconduct. See Read Corp. v. Portec, Inc., 970 F.2d 816, 826-27 (Fed. Cir. 1992), abrogated in part on other grounds by Markman v. Westview Instruments, Inc., 52 F.3d 967, 975-78 (Fed. Cir. 1995) (en banc).  The Federal Circuit has repeatedly explained that

> the paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances.

Spectralytics, Inc. v. Cordis Corp., 649 F.3d 1336, 1349 (Fed. Cir. 2011) (quoting Read, 970 F.2d at 826).

### b.  Application

#### i.  Factors favoring no enhancement

Read factors (2), (6), (7) and (8) weigh against enhancing damages.  First, the relatively short duration of infringement

does not justify enhanced damages especially when WBIP will be compensated with an ongoing royalty for post-verdict infringement.

Second, the fact that this Court denied injunctive relief in favor of an ongoing royalty weighs against penalizing Kohler for failing to take remedial action post-verdict while pre-verdict infringement is adequately compensated by the royalties awarded by the jury.  Moreover, Kohler's defenses, while unreasonable, were not "totally unsupportable" or "frivolous" such that it would be fair to enhance damages based on ongoing infringement during the course of the litigation. See Gustafson, Inc. v. Intersystems Indus. Prods., Inc., 897 F.2d 508, 511 (Fed. Cir. 1990).

Third, there is insufficient evidence that Kohler acted improperly upon learning of the patent.  The absence of opinion letters from outside counsel is not persuasive evidence of bad faith or willful blindness as to infringement when there is evidence that Kohler at least consulted with in-house counsel.

Finally, the Court agrees with Kohler that its project manager's reference in an internal memorandum in 2007 to "shutting the door" on competition from Westerbeke is, at most, evidence of normal business competition rather than of an improper motive justifying enhanced damages. Cf. i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 858 (Fed. Cir. 2010) (finding

enhanced damages justified when infringer was motivated to render patentee's products "obsolete").  Moreover, Kohler had substantial reasons to address its carbon monoxide problems aside from driving out a competitor.

### ii.  Factors favoring enhancement

On the other hand, Read factors (1), (3), (4), (5) and (9) favor enhancing damages although a few of those factors present a close call.  First, while there is no "smoking gun" evidence of copying, evidence that Kohler developed its Low-CO generators with catalytic converters and electronic fuel injection components after learning about Westerbeke's product at a trade show supports the inference that Kohler was at least reckless as to whether it copied. Cf. Va. Panel Corp. v. MAC Panel Co., 133 F.3d 860, 867 (Fed. Cir. 1997) (upholding 10% enhancement based on part on finding that any copying was merely reckless and not deliberate).  Kohler adduces no authority in support of its argument at the hearing that its conduct before the subject patents issued cannot be considered under Read.

Second, Kohler's conduct as a party to the litigation justifies enhancement.  WBIP overstates Kohler's misconduct but the Court agrees that on several occasions, Kohler's litigation strategy went beyond zealous advocacy and unnecessarily burdened the Court and its opponent.  For instance, Kohler had a third party designate documents "for outside attorneys' eyes only"

-16-

thus prohibiting WBIP's expert from viewing them and then subsequently argued that the expert's opinion was unreliable because he did not address those "key" documents.

Third, for the reasons discussed above, the case was not particularly close because, while not frivolous or advanced in bad faith, Kohler's defenses were not objectively reasonable.

Fourth, a reasonable inference to draw from the fact that Kohler did not make available at trial current and recent employees is that Kohler was content to conceal the fact that its witnesses might have revealed that Kohler knew of WBIP's patent sooner than 2010.  It is not a strong inference, however, because the decision not to call a witness has many ramifications, including compliance with time limits imposed by this Court.  As a result, the Court applies only marginal weight to this factor in deciding whether to enhance damages.

Finally, there is no dispute that Kohler is a much larger company than Westerbeke and has significantly more resources.

### iii. Analysis

Based on the Read factors and all of the facts and circumstances in this case, the Court concludes that it is appropriate to enhance WBIP's damages award by 50%.  Kohler's conduct was not so egregious as to warrant double or treble damages for willful infringement and, as noted above, about one-half of the Read factors weighed against enhancing damages.

-17-

Assuming that WBIP accepts the remittitur, the Court will award it $5,633,126 in damages.

### B.   Attorneys' fees

#### 1.   Legal standard

Under 35 U.S.C. § 285, district courts may award reasonable attorneys' fees to the prevailing party only in "exceptional" cases.  The prevailing party must establish the "exceptional" nature of a case by clear and convincing evidence. Cambridge Prods., Ltd. v. Penn Nutrients, Inc., 962 F.2d 1048, 1050 (Fed. Cir. 1992).  Many forms of misconduct can support finding a case exceptional, including

> litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit; or willful infringement.

Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd., 726 F.3d 1359, 1366 (Fed. Cir. 2013).  Even in exceptional cases, however, the decision to award attorneys' fees and the amount to be awarded are within the sound discretion of the district court. Brooks Furniture Mfg., Inc. v. Dutalier Int'l, Inc., 393 F.3d 1378, 1382 (Fed. Cir. 2005).

#### 2.   Application

The Court finds that Kohler's willful infringement renders this case exceptional and justifies the award of reasonable attorneys' fees and costs.  It will base the award on

submissions of the parties according to a supplemental briefing schedule that will be issued forthwith.

## IV.  **WBIP's Motion to Reconsider Denial of Permanent Injunction**

With respect to post-trial relief, the Court will not reconsider its denial of WBIP's motion for a permanent injunction to prevent Kohler from selling its infringing products.  A motion for reconsideration is an "extraordinary remedy" granted only when the movant demonstrates that the court committed a "manifest error of law" or that newly discovered evidence that was not previously available has come to light. Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (internal citations omitted).  Even if the plaintiff has a larger manufacturing capability than previously estimated, the Court is persuaded that it is in the public interest to have more than one company manufacture low-carbon monoxide generators and a more appropriate solution than a permanent injunction is to require Kohler to pay a fair, ongoing royalty for its use of WBIP's patents.

## V.  **WBIP's Motion for an Ongoing Royalty**

The Court advised the parties in its Order denying WBIP's motion for a preliminary injunction that it would determine the rate of an ongoing royalty if the parties were unable to agree upon one.  The parties failed to agree and therefore the issue of an appropriate ongoing royalty is before the Court.  WBIP

urges the Court to set the rate at 13.5%, the same rate found by
the jury.  Kohler argues that the rate should be set at 3%
because a higher rate would be tantamount to injunctive relief.

### A.   Legal standard

An ongoing royalty for patent infringement is an
appropriate alternative to permanent injunctive relief but
should not be awarded as a matter of course.  Paice LLC v. Toyota
Motor Corp., 504 F.3d 1293, 1314-15 (Fed. Cir. 2007).  The
Federal Circuit has explained that the amount awarded should
reflect the "fundamental difference" between pre-verdict and
post-verdict infringement due to changes in the relative
bargaining positions of the patentee and the infringer:

> Prior to judgment, liability for infringement, as well
> as the validity of the patent, is uncertain, and
> damages are determined in the context of that
> uncertainty.  Once a judgment of validity and
> infringement has been entered, however, the calculus
> is markedly different because different economic
> factors are involved.

Amado v. Microsoft Corp., 517 F.3d 1353, 1361-62 (Fed. Cir.
2008) (citing Paice, 504 F.3d at 1315, 1317).  Many district
courts have therefore set the post-verdict rate higher than the
pre-verdict rate based on the fact that the post-verdict
infringer knows that it is infringing and the post-verdict
patentee has a strong claim to enhanced damages should it
abandon the hypothetical royalty negotiations and pursue a
patent infringement lawsuit.  See, e.g., Mondis Tech. Ltd. v.

Chimei InnoLux Corp., 822 F. Supp. 2d 639, 649 (E.D. Tex. 2011)
(increasing rate from 0.5% to 0.75%); Creative Internet Adver.
Corp. v. Yahoo! Inc., 674 F. Supp. 2d 847, 861 (E.D. Tex. 2009)
(increasing from 20% to 23%).  Paice, however, does not
foreclose setting an identical rate to that found by the jury.
See Paice, 504 F.3d at 1315.

### B.   Application

The Court agrees with WBIP that 13.5% is an appropriate
ongoing royalty rate.  It is not persuaded by Kohler's argument
that 13.5% is excessive because the damages award was not
supported by the evidence.  Kohler adduces no authority for the
proposition that the Court must conclude that all aspects of the
damages award are tainted merely because the jury erred in
setting the royalty base.  Moreover, the jury already presumably
considered and rejected Kohler's argument that it could not
afford to pay a higher royalty when it set the rate at 13.5% and
the Court gives the jury's finding, which was made after due
consideration and a comprehensive charge on the law,
considerable deference in setting the ongoing royalty.

## ORDER

For the foregoing reasons,

1)   Defendant's motion for a new trial or remittitur (Docket No. 225) is **ALLOWED**, in part, and **DENIED**, in part.  If plaintiff agrees to a remittitur reducing the jury award of compensatory damages to $3,775,418, it will file written notice of its acceptance thereof on or before Wednesday, February 26, 2014.  In default of such notice, the Court will schedule a new trial limited to the issue of damages.

2)   Plaintiff's motion for an accounting and for pre- and post-judgment interest (Docket No. 232) is **ALLOWED**, in part, and **DENIED**, in part.  The Court will amend the judgment to include royalties of $149,524 based upon infringing sales of $1,107,586 between September, 2012 and the date of entry of judgment in May, 2013. Defendant will pay pre-judgment interest at the prime rate,[1] compounded quarterly, and post-judgment interest at the weekly average 1-year constant maturity Treasury rate of 0.12%, compounded annually.  Post-judgment interest is to be applied to the total money judgment, including pre-judgment interest, enhanced damages, attorneys' fees and ongoing royalties.

3)   Plaintiff's motion for enhanced damages and attorneys' fees and costs (Docket No. 230) is **ALLOWED**, in part, and otherwise taken under advisement.  The Court will enhance compensatory damages by 50% for a total award of $5,663,126 and will award reasonable attorneys' fees and costs.  The plaintiff is directed to submit a supplemental memorandum on or before Wednesday, March 5, 2014 with respect to the amount of fees and costs to be awarded.  Defendant's opposition, if any, is due by Wednesday, March 19, 2014.

4)   Plaintiff's motion for reconsideration of its motion for a permanent injunction (Docket No. 259) is **DENIED**.

---

[1]See Average Majority Prime Rate Charged by Banks on Short-Term Loans to Business (1956-2013), available at http://www.federalreserve.gov/releases/h15/data.htm (last updated Dec. 19, 2013).

5)   Plaintiff's motion for an ongoing royalty (Docket No.
     223) is **ALLOWED** and is set at a rate of 13.5%.


**So ordered.**

                                   /s/ Nathaniel M. Gorton
                                   Nathaniel M. Gorton
                                   United States District Judge
Dated February 12, 2014